**23-1044**

[ORAL ARGUMENT NOT YET SCHEDULED]

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————————————————————

——————————————————————————

JOHN DOE,

Petitioner,

v.

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

Respondent.

———————————————————————————

On Petition for Review of
an Order of the Securities and Exchange Commission

———————————————————————————

BRIEF OF THE SECURITIES AND EXCHANGE COMMISSION,
RESPONDENT

———————————————————————————

MEGAN BARBERO
General Counsel

MICHAEL A. CONLEY
Solicitor

WILLIAM K. SHIREY
Counsel to the Solicitor

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
(202) 551-5043 (Shirey)

## CERTIFICATE AS TO PARTIES,
## RULINGS AND RELATED CASES

**A.      Parties**

John Doe and the Securities and Exchange Commission are the only parties.

There are no intervenors or *amici*.

**B.      The Ruling Under Review**

The ruling under review is the Securities and Exchange Commission's

January 19, 2023 final order determining a whistleblower award application

submitted by petitioner.  *See Order Determining Whistleblower Award Claim*,

Exchange Act Release No. 34-96708, 2023 WL 345196 (Jan. 19, 2023).

**C.      Related Cases**

There are no related cases that have been before this Court.

# TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES ...............i

TABLE OF AUTHORITIES ......................................................................iv

GLOSSARY ...........................................................................................vi

PRELIMINARY STATEMENT ................................................................1

COUNTERSTATEMENT OF JURISDICTION ....................................2

COUNTERSTATEMENT OF ISSUES ...................................................3

COUNTERSTATEMENT OF THE CASE...............................................3

A.    Statutory and Regulatory Scheme ..................................................3

B.    Factual and Procedural Background ................................................5

    1.    The securities fraud and Claimant's connection to it ...........................5

    2.    The disclosure of the fraud and the resulting covered action ..............6

    3.    Preliminary denial of Claimant's award application...........................7

    4.    Claimant's reconsideration request .....................................8

    5.    Denial Order ..................................................................10

STANDARD OF REVIEW ...................................................................12

SUMMARY OF ARGUMENT ...............................................................13

ARGUMENT .......................................................................................14

    The Commission acted within its discretion in denying Claimant's
award application on the ground that Claimant did not provide
original information to the Commission ......................................14

CONCLUSION ....................................................................................................... 22

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of
    Fed. Rsrv. Sys.*, 745 F.2d 677 (D.C. Cir. 1984) ................................................. 12

*Covad Commc'ns Co. v. FCC*,
    450 F.3d 528 (D.C. Cir. 2006) ........................................................... 21

*Davis v. Pension Benefit Guar. Corp.*,
    734 F.3d 1161 (D.C. Cir. 2013) ......................................................... 21

*Highlands Hosp. Corp.*, Inc. *v. NLRB*,
    508 F.3d 28 (D.C. Cir. 2007) ............................................................ 13

*Kilgour v. SEC*,
    942 F.3d 113 (2d Cir. 2019) .............................................................. 3

*McBurney v. Roszkowski*,
    875 A.2d 428 (R.I. 2005) ................................................................. 17

*Milk Indus. Found. v. Glickman*,
    132 F.3d 1467 (D.C. Cir. 1998) ......................................................... 12

*Rhea Lana, Inc. v. United States*,
    925 F.3d 521 (D.C. Cir. 2019) ...................................................... 12-13

*State v. Schubert*,
    561 A.2d 1186 (N.J. Super. Ct. App. Div. 1989) ............................................. 20

**Statutes**

Securities Exchange Act of 1934, 15 U.S.C. §§ 78a, *et seq*.
    Section 21F, 15 U.S.C. § 78u-6 .......................................................... 3
    Section 21F(a)(1), 15 U.S.C. § 78u-6(a)(1) ...................................................... 4
    Section 21F(b)(1), 15 U.S.C. § 78u-6(b)(1) ...................................................... 4
    Section 21F(f), 15 U.S.C. § 78u-6(f) ....................................................... 2, 3, 12

Administrative Procedure Act, 5 U.S.C. §§ 551, *et seq.*
    5 U.S.C. § 706(2) ....................................................................... 12

5 U.S.C. § 706(2)(A) ........................................................................ 12

5 U.S.C. § 706(2)(E) ........................................................................ 12

**Rules and Regulations**

American Bar Association Model Rule of Professional Conduct 1.6 .................... 17

Federal Rule of Appellate Procedure 26(a)(1)(C) .................................... 3

Florida Rules of Professional Conduct

Florida Rule 4-1.2 ........................................................................ 15

Florida Rule 4-1.2(a) ..................................................................... 15

Florida Rule 4-1.2(c) ..................................................................... 16

Florida Rule 4-1.2(d) ..................................................................... 16

Florida Rule 4-1.4 ........................................................................ 16

Florida Rule 4-1.4(a) ..................................................................... 16

Florida Rule 4-1.6 .................................................................... 15, 17

Florida Rule 4-1.6(c)(1) .......................................................... 10, 11, 15

Rules under the Securities Exchange Act of 1934, 17 C.F.R. §§ 240.0-1, *et seq*.

Exchange Act Rule 21F-4(b)(1)(i), 17 C.F.R. § 240.21F-4(b)(1)(i) .................. 4

Exchange Act Rule 21F-4(b)(4)(ii), 17 C.F.R. § 240.21F-4(b)(4)(ii) ................ 4

Exchange Act Rule 21F-10(e)(2), 17 C.F.R. § 240.21F-10(e)(2) ...................... 8

**Commission Materials**

Securities Whistleblower Incentives and Protections,
76 Fed. Reg. 34300 (June 13, 2011) ............................................. 3, 5

*Order Determining Whistleblower Award Claim*,
Exchange Act Release No. 34-96708, 2023 WL 345196 (Jan. 19, 2023) ........... i

**Other Authorities**

ABA Comm. on Ethics & Pro. Resp., Formal Op. 01-421 (2001) ........................ 17

RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 61 (2000) ................ 17

# GLOSSARY

| | |
|---|---|
| A | Appendix filed by Claimant |
| ABA Model Rules | American Bar Association Model Rules of Professional Conduct |
| Award Program | Whistleblower award program administered by the Securities and Exchange Commission |
| Br. | Claimant's opening brief |
| Claimant | Petitioner John Doe |
| Client-Information Rule | Securities Exchange Act Rule 21F-4(b)(4)(ii) |
| Commission or SEC | Securities and Exchange Commission |
| Denial Order | *Order Determining Whistleblower Award Claim*, Exchange Act Release No. 34-96708, 2023 WL 345196 (Jan. 19, 2023) |
| Employer | Claimant's employer |
| Exchange Act | Securities Exchange Act of 1934 |
| Florida Rules | Florida Rules of Professional Conduct |
| Interest-of-the-Client Exception | Florida Rule of Professional Conduct 4-1.6(c)(1) |
| Project | The specified purpose for which the invested funds were to be used as stated in the offering documents |
| Securities Offering | The offering and sale of the securities of one of the Defendants to investors |

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

_____

JOHN DOE,

Petitioner,

v.

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

Respondent.

_____

On Petition for Review of
an Order of the Securities and Exchange Commission

_____

BRIEF OF THE SECURITIES AND EXCHANGE COMMISSION,
RESPONDENT

_____

## PRELIMINARY STATEMENT

Petitioner John Doe ("Claimant") filed a petition for review challenging a Securities and Exchange Commission final order ("Denial Order") that denied Claimant's whistleblower award application. The award application sought a monetary award in connection with a successful enforcement action that the Commission pursued against various persons for violations of the federal securities laws and regulations thereunder. Claimant, an attorney, learned the information upon which the award claim is based in the course of representing a client. It is undisputed that Claimant disclosed the information to the Commission on

Claimant's own behalf (to obtain a whistleblower award from the Commission) and that Claimant did so without express authorization from the client.

The Commission denied the award claim because the information that Claimant provided did not qualify as "original information," a statutory precondition for the Commission to make an award. Original information must, among other things, be based on a whistleblower's independent knowledge or independent analysis. But information learned by an attorney in the course of that attorney's representation of a client does not qualify as the attorney's independent knowledge or analysis (and thus does not qualify as original information), unless disclosure was authorized under the applicable state attorney-conduct rules (or pursuant to certain other limited exceptions specified in the Commission's regulations). The Commission concluded that Claimant failed to demonstrate that authorization to make the disclosures under the applicable state attorney-conduct rules or otherwise and, thus, denied Claimant's award claim.

## COUNTERSTATEMENT OF JURISDICTION

Claimant's petition for review challenges the Denial Order issued by the Commission on January 19, 2023. *See* Br. at 4.[1] Section 21F(f) of the Securities and Exchange Act of 1934 ("Exchange Act") authorizes this Court's review of

---

[1] Throughout this brief, "Br. __" is a page reference to Claimant's opening brief and "A__" is a page reference to the appendix filed by Claimant.

such final orders.  Claimant timely filed the petition on February 17, 2023.  *See id.*

(providing 30 days to file a petition for review); *see also* FED. R. APP. P.

26(a)(1)(C).

## COUNTERSTATEMENT OF ISSUES

Whether the Commission acted within its discretion in determining that

Claimant failed to demonstrate that the disclosures to the Commission "served

[Claimant's] client's interest" as that term is understood under the applicable state

attorney-conduct rules where the disclosures:  (a) were not in furtherance of the

client's objective in pursuing the representation and were outside of the scope of

the representation; and (b) were intended (by Claimant's own admission) to alert

the Commission about potential wrongdoing by the client and to cause the

Commission to investigate the client.

## COUNTERSTATEMENT OF THE CASE

### A.    Statutory and Regulatory Scheme

In July 2010, Congress amended the Exchange Act by adding Section 21F to

establish a new Commission-administered whistleblower award program ("Award

Program").  *See Kilgour v. SEC*, 942 F.3d 113, 120 (2d Cir. 2019).  The Award

Program is designed to incentivize "individuals with knowledge of securities

violations to report those violations to the Commission."  Securities Whistleblower

Incentives and Protections, 76 Fed. Reg. 34300, 34310 (June 13, 2011).

Individuals may receive an award only if they voluntarily provided original information to the Commission that led to the successful enforcement of a covered action, which is a Commission enforcement action in which the monetary sanctions imposed exceed $1,000,000. *See* Exchange Act §§ 21F(a)(1) & (b)(1). When individuals do qualify for an award, the Commission is authorized to pay an amount between 10 and 30 percent of the monetary sanctions collected in the covered action. *Id.* § 21F(b)(1).

In 2011, the Commission adopted rules that (among other things) establish the criteria for assessing whether an individual provided original information, including that the information must be "[d]erived from [the whistleblower's] independent knowledge or independent analysis[.]"  Exchange Act Rule 21F-4(b)(1)(i).  In turn, Exchange Act Rule 21F-4(b)(4)(ii) (the "Client-Information Rule") provides that the "Commission will not consider information to be derived from [a whistleblower's] independent knowledge or independent analysis" if the whistleblower

> obtained the information in connection with the legal representation of a client on whose behalf [the whistleblower] … [was] providing services, and [the whistleblower] seek[s] to use the information to make a whistleblower submission for [the whistleblower's] own benefit, unless disclosure would otherwise be permitted by an attorney pursuant to … the applicable state attorney conduct rules[.]

The Client-Information Rule "make[s] clear that [the Commission] will not reward attorneys or others for providing [the Commission] with information that

could not otherwise be provided to [the Commission] consistent with an attorney's ethical obligations[.]" 76 Fed. Reg. at 34315/2. And to the limited extent that the Client-Information Rule does allow an attorney to receive an award based on a disclosure, the rule is designed to be "consistent with the public policy judgments that have been made as to when the benefits of permitting [attorney] disclosure are justified notwithstanding any potential harm to the attorney-client relationship." *Id.* at 34315/2-3; *see also id.* at 34315/3 (explaining that the Client-Information Rule "send[s] a clear, important signal to attorneys, clients, and others that there will be no prospect of financial benefit for submitting information in violation of an attorney's ethical obligations"). Consistent with those objectives, when the Commission adopted the Client-Information Rule, it made clear that the rule applies to "attorneys who work in-house for an entity[,]" explaining in the adopting release that accompanied the rule "that all attorneys—whether specifically retained or working in-house—are eligible for awards only to the extent that their disclosures to [the Commission] are consistent with their ethical obligations[.]" *Id.* at 34315/2.

## B. Factual and Procedural Background

### 1. The securities fraud and Claimant's connection to it

Claimant's award claim relates to a securities fraud undertaken by various individuals and affiliated entities (collectively "Defendants"). A2. As part of the

securities fraud scheme, investors were offered and sold the securities of one of the Defendants ("Securities Offering").  *See* A4, A7, A9-10.  Among other things, the offering documents materially misrepresented that the invested funds would be used for a specified purpose ("the Project").  *See* A9-13.

Claimant's employer ("Employer") provided certain administrative and other assistance to the Defendants in connection with Securities Offering.  A91. Claimant worked as an in-house counsel for Employer.  A91.  While serving in that capacity, Claimant primarily focused on certain specialized legal and administrative matters that were necessary because of the particular nature of the Securities Offering.  A91; *see also* A57.[2]  In addition to those primary responsibilities, Claimant assisted with "the preparation of offering documents" for the Securities Offering.  A91.  As the Commission found, "Claimant learned the information that was the subject of Claimant's submission to the Commission by virtue of Claimant's role as an attorney at the Employer and Claimant's role in providing legal services in connection with the … offering."  A91.

### 2.  The disclosure of the fraud and the resulting covered action

In late 2014, the Commission received a referral from another governmental authority advising of a potential securities fraud in connection with the Securities

---

[2]  Details of the particular nature of the Securities Offering are in the record, *see* A6-7.

Offering.  A60.  The next day, Claimant submitted a whistleblower tip alleging, among other things, that the funds invested as part of the Securities Offering had been misappropriated by one of the Defendants.  A51-52.

Relying on the two tips, the Commission staff opened an investigation.  A59-61.  That investigation resulted in the Commission bringing the covered action against the Defendants for violations of various antifraud provisions of the federal securities laws in connection with the Securities Offering.  A61; *see also* A2-19.  The district court subsequently entered a series of judgments that resulted in monetary sanctions exceeding the statutory threshold that triggers potential application of the Commission's Award Program.  A62-63.

### 3.    Preliminary denial of Claimant's award application

Claimant timely submitted an application for an award in connection with the covered action, and the Commission's staff issued a preliminary determination recommending a denial.  The preliminary determination explained that "Claimant did not submit 'original information' to the Commission because the information was obtained in connection with Claimant's legal representation of [Employer] …

and therefore, the information was not derived from Claimant's independent knowledge or independent analysis." A69.[3]

The preliminary determination also found that "no exception would permit Claimant to disclose the information for Claimant's own benefit in a whistleblower submission." A69. In reaching that conclusion, the preliminary determination applied the Florida Rules of Professional Conduct ("Florida Rules"). *See* A68 & n.2. "Based on the record in this case, Claimant was neither required nor permitted to reveal the information at issue to the Commission under the [Florida Rules]." A69 n.5.

### 4. Claimant's reconsideration request

Consistent with the Commission's whistleblower rules, *see* Exchange Act Rule 21F-10(e)(2), Claimant timely filed a request for reconsideration of the preliminary denial. Claimant did not dispute that Claimant learned the information in connection with the representation of Employer and that, as a result, the information falls within the scope of the Client-Information Rule's express terms.

Instead, Claimant argued (among other things) that the information that was disclosed is subject to the Client-Information Rule's limited exception for

---

[3] The preliminary determination explained that "[t]he duty of confidentiality is a cornerstone of the attorney-client relationship, and it applies regardless of the source of the information (whether it was obtained from the client itself or from a third party)." A69 n.4.

information disclosed in accordance with applicable state attorney-conduct rules. To support of that contention, Claimant identified various provisions of the Florida Rules that Claimant argued authorized the disclosure of the information (and thus brought the disclosed information within the definition of original information). A76-83.

The reconsideration request included a declaration from the Claimant explaining that "concerns" that the client was engaged in wrongdoing motivated the Claimant to make the disclosures. A84. Among other things, Claimant made the following statements in the declaration:

- "The purpose of the disclosure in my whistleblower submission was to prevent a crime [from] being committed by [Employer] (my client) …."

- "The purpose of my tip was to alert the SEC to investigate the entire [Securities Offering], including all affiliated persons and entities, including not only [certain specified Defendants], but also … [Employer], … and any other entities affiliated with the ongoing scheme."

- "The ultimate purpose of my tip was to protect the innocent investors in the [Project] from having their funds misappropriated by *any* person or entity, including [one of the Defendants] and the company I worked for, [Employer]."

- "I believed the submission of the tip to be necessary to prevent the issuer ([Employer] …) from committing a material violation (fraud and misappropriation) that was likely to, and in fact did, cause substantial injury to the financial interest of investors."

- "I believed that disclosure of the ongoing fraud ... was necessary to avoid assisting a criminal or fraudulent act by my client, [Employer]."

- "I considered that the tip would lead to an SEC investigation of the entire money trail, and would uncover any wrongdoing by [a specified Defendant] or [Employer] or [another specified Defendant]."

- "My concerns over the conduct of my client, [Employer], and [a specified Defendant] ... led to my submission of the tip ...."

A84-85.

### 5. Denial Order

The Denial Order found that the "information Claimant provided to the SEC was client confidential information because it was related to the representation of [Claimant's] client, the Employer." A96. Thus, under the Client-Information Rule, "Claimant could only disclose [the information] if the disclosure is authorized under an exception to the duty of confidentiality." A96. The Commission then explained that, based on the record before it, Claimant had failed to demonstrate that authorization to make the disclosures.

In particular, the Denial Order addressed Claimant's argument that the disclosures were authorized by Florida Rule 4-1.6(c)(1) (the "Interest-of-the-Client Exception"), which provides "that a lawyer may disclose confidential information 'to the extent the lawyer reasonably believes necessary [to] ... serve the client's interest unless it is information the client specifically requires not [to] be disclosed.'" A97 (omission in original) (emphasis omitted) (quoting Florida Rule

4-1.6(c)(1)).[4]  The Commission found that Claimant had not demonstrated a "reasonabl[e] belief" that Claimant's actions served Employer's overall interests. *First*, the Commission acknowledged Claimant's contention that the disclosures would serve the client's interest because, in Claimant's view, the disclosures might help prevent further misappropriation of investor funds by one of the individual Defendants, possibly lead to recovery of funds that had been misappropriated, help lead to successful completion of the Project, and possibly lead Employer to undertake more diligent efforts to ensure that investor funds were used only for Project-related purposes.  *See* A97.  But the Commission concluded that, on the record before it, these considerations "serve the interests of the … investors rather than the interests of [Claimant's] client."  A97.  *Second*, the Commission concluded that Claimant had "not demonstrate[d] how exposing [his] client to an SEC investigation and/or enforcement action based on [his] suspicions would be in [the] client's interest."  A97.

Having determined that, "[b]ased on the record in this case," Claimant was not authorized to make the disclosures under the Interest-of-the-Client Exception (or any other regulatory provisions that Claimant identified), the Commission held

---

[4]     The Denial Order also rejected (A93-99) Claimant's arguments that the disclosures to the Commission were authorized by other provisions.  Because Claimant's opening brief includes arguments related only to the Interest-of-the-Client Exception—and thereby waives reliance on those other provisions—this summary of the Denial Order does not discuss those provisions.  *See infra* p. 21.

that Claimant did not provide original information because "Claimant's information cannot be considered as derived from Claimant's independent knowledge or analysis." A98-99. Accordingly, the Commission denied the award application. *See* A99.

## STANDARD OF REVIEW

"Any determination made" in connection with a whistleblower award application, "including whether … to make [an] award[], shall be in the discretion of the Commission." Exchange Act § 21F(f). This Court reviews any award determinations pursuant to Section 706(2) of the Administrative Procedure Act, 5 U.S.C. § 706(2). *See* Exchange Act § 21F(f). Under that narrow and deferential standard, *see Milk Indus. Found. v. Glickman*, 132 F.3d 1467, 1473 (D.C. Cir. 1998), this Court may not set aside an award denial unless the denial was "arbitrary, capricious, an abuse of discretion, … otherwise not in accordance with law[,]" or "unsupported by substantial evidence[.]" 5 U.S.C. § 706(2)(A) & (E).[5]

"In assessing whether the agency's decision was arbitrary and capricious," this Court "ask[s] whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Rhea Lana,*

---

[5] *See generally Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 745 F.2d 677, 683-84 (D.C. Cir. 1984) ("[T]here is no substantive difference between what [arbitrary and capricious review] requires and what would be required by the substantial evidence test …." (emphasis omitted)).

*Inc. v. United States*, 925 F.3d 521, 525-26 (D.C. Cir. 2019) (citation and internal

quotation marks omitted). And when applying the substantive-evidence standard,

this Court reviews to ensure that there is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion" and "will reverse for lack

of substantial evidence only when the record is so compelling that no reasonable

factfinder could fail to find to the contrary." *Highlands Hosp. Corp., Inc. v. NLRB*,

508 F.3d 28, 31 (D.C. Cir. 2007) (citation and internal quotation marks omitted).

## SUMMARY OF ARGUMENT

The petition for review should be denied because the Commission acted

within its discretion in denying Claimant's award claim on the ground that the

information Claimant disclosed to the Commission did not qualify as original

information. Attorneys may not receive an award for information that they learn in

connection with their representation of a client unless the disclosures to the

Commission were authorized. Such information will not qualify as original

information, which is a requirement for receiving an award. Claimant argues that

the Florida Rules authorized the disclosures to the Commission because the

disclosures were reasonably intended to serve the client's interest. But the

Commission acted within its discretion in concluding, on the record before it, that

the disclosures were not reasonably intended to serve the interests of Claimant's

client. Claimant did not demonstrate how the disclosures were in furtherance of

the representation or the client's objectives in pursuing the representation; at most, the disclosures aimed to protect the investors, not serve the client's interests underlying the representation. Moreover, Claimant admitted that a personal motivation for making the disclosures was to alert the Commission about potential wrongdoing by the client so as to cause the Commission to investigate the client— a purpose for disclosure that the Commission reasonably concluded was not authorized by the Florida Rules.

## ARGUMENT

### The Commission acted within its discretion in denying Claimant's award application on the ground that Claimant did not provide original information to the Commission.

Claimant does not dispute that the award application implicates the Award Program's Client-Information Rule, which applies when the information upon which a whistleblower award claim is based was "obtained … in connection with the legal representation of a client on whose behalf" the whistleblower was providing legal services. Such information does not qualify as the whistleblower's independent knowledge or independent analysis (and is thus not original information as required for an award). And the Commission reasonably rejected the argument that Claimant disclosed the information to the Commission in accordance with Florida's Interest-of-the-Client Exception so as to fall within the

narrow safe harbor of the SEC's Client-Information Rule for attorney disclosures "permitted by … the applicable state attorney conduct rules[.]"

The text of Florida's Interest-of-the-Client Exception states that the exception applies only when "the lawyer reasonably believes" [the disclosure is] necessary to … serve the client's interest[.]" Florida Rule 4-1.6(c)(1). Although the term "client's interest" is not defined, the accompanying comment in the Florida Rules explains that "[a] lawyer is impliedly authorized to make disclosures about a client when appropriate *in carrying out the representation*[.]" Florida Rule 4-1.6 cmt. (emphasis added). This guidance demonstrates that whether a disclosure potentially serves a client's interest must be assessed against the client's interests—*i.e.*, objectives—in pursuing the representation.[6]

That understanding is further supported by other provisions in the Florida Rules. Rule 4-1.2(a), for example, provides that "a lawyer must abide by a client's decisions concerning the objectives of [the] representation," and the rule permits a lawyer to take any action "on behalf of the client" only to the extent "impliedly authorized" by the client "to carry out the representation." *See also* Florida Rule 4-1.2 cmt. (stating that "the client [has] the ultimate authority to determine the purposes to be served by the legal representation" and "the lawyer … may take

---

[6]     *Cf. generally* Florida Rule 4-1.6 cmt. ("A fundamental principle in the client-lawyer relationship is that, in the absence of the client's informed consent, the lawyer must not reveal information relating to the representation.").

such action as is impliedly authorized to carry out the representation").[7]  And by imposing duties to consult and communicate with the client about the "means by which the client's objectives are to be accomplished" and "the status of the matter[,]" Florida Rule 4-1.4(a) further reinforces that the client's interest when applying the Interest-of-the-Client Exception is to be assessed against the client's objectives in pursuing the representation.  *See also* Florida Rule 4-1.4 cmt. (stating that a lawyer's communications should ensure that a client can "participate

---

[7]     Florida Rules 4-1.2(c) and (d) provide two exceptions in which a lawyer is not bound when carrying out the representation to operate in accordance with the client's objectives.  Neither is applicable here.

intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued").[8]

At no point—either when proceeding before the Commission or in the opening brief—has Claimant explained how the disclosures to the Commission furthered the client's objectives for the representation. Indeed, given the Claimant's own description of the nature of Claimant's legal work for Employer, *see* A57-58, the record before the agency offers no indication that the disclosure of the misconduct to the Commission was within the scope of the legal services

---

[8]    That any disclosure under the Interest-of-the-Client Exception must be (at a minimum) in furtherance of the client's objectives in pursuing the representation in order to reasonably be in the "client's interest" is consistent with Rule 1.6 of the American Bar Association Model Rules of Professional Conduct ("ABA Model Rules") (upon which Florida Rule 4-1.6 is based), the RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS (hereinafter "RESTATEMENT"), and basic principles of agency law.  ABA Comm. on Ethics & Pro. Resp., Formal Op. 01-421 (2001) (available on Westlaw) (stating that "[u]nder [ABA Model] Rule 1.6," a lawyer may make "disclosures that are impliedly authorized in order to carry out the representation"); RESTATEMENT § 61 (2000) ("A lawyer may use or disclose confidential client information when the lawyer reasonably believes that doing so will advance the interests of the client *in the representation*. (emphasis added)); *id.* § 61 cmt. b ("A lawyer has general authority to take steps reasonably calculated to further the client's objectives in the representation.  [Section 61] is a particular application of that general authority. … This Section requires that a lawyer have a reasonable belief that the use or disclosure will further the objectives of the client in the representation." (citation omitted)); *McBurney v. Roszkowski*, 875 A.2d 428, 437 (R.I. 2005) (per curiam) (explaining that the relationship between an attorney and client "is essentially one of principal and agent," where the "agent is authorized to do, and to do only, what is reasonable for him to infer that the principal desires him to do in the light of the principal's manifestations and the facts as he knows or should know them at the time he acts." (citations and internal quotation marks omitted)).

Claimant was retained to provide and, thus, could not have been reasonably understood by Claimant as "necessary to … serve the client's interests." *See also* Br. at 7 (describing the type of legal services that Claimant's representation "primarily involved"). Nothing about the nature of Claimant's responsibilities as an in-house counsel for Employer suggests that Claimant was implicitly authorized to disclose to the Commission any information that Claimant learned in connection with the representation. In the absence of a contrary demonstration by the Claimant, the Commission reasonably determined that Claimant's disclosures were not authorized by Florida's Interest-of-the-Client Exception.

Neither of Claimant's challenges to the Commission's determination has merit. Claimant argues (at 20) that the Commission was "plainly wrong" when it determined (at A97) that "all of the interests described by Claimant [in the response to the preliminary denial by the staff] serve the interests of the Limited Partnership investors rather than the interests of [the client]." The Denial Order identified (among other things) Claimant's representation that the disclosures would "serve the Employer's interest by potentially preventing further misappropriation" by one of the Defendants, potentially facilitating recovery of the "funds that had been misappropriated," "help lead to the successful completion of the Project[,]" and perhaps "lead to [Claimant's] client making more diligent efforts to ensure that investors funds were used only for Project-related

purposes[.]" A97. Claimant concedes (at 19) that these outcomes would all serve the interests of investors—as the Commission observed. And although Claimant contends that achieving such goals through the disclosures to the Commission would also be "in the direct interest" of Employer (at 19 (emphasis omitted)), Claimant fails to demonstrate how seeking any of these outcomes reasonably could have been viewed as consistent with the scope of the representation or *Employer's* objectives in employing Claimant as an in-house counsel. As such, the Denial Order reasonably concluded that—even if Claimant's disclosures to the Commission were intended to achieve these investor-protective outcomes—they could not have been reasonably deemed necessary to serve the client's interest within the meaning of the Interest-of-the-Client Exception.[9]

There is likewise no merit to Claimant's challenge (at 21) to the Denial Order's finding that "Claimant does not demonstrate how exposing [Claimant's] client to an SEC investigation and/or enforcement action based on suspicions would be in [Claimant's] client's interest" (A97). Claimant argues (at 21) that it is "self-evident" that Claimant would "reasonably believe when [Claimant] made the

---

[9]     In the opening brief (at 20), Claimant identifies for the first time certain additional ways in which Claimant believes that "having the stolen project funds returned" as a result of the disclosures to the Commission would "serve the interests of Claimant's client." But here again, Claimant fails to recognize that Claimant was not authorized to pursue his/her own view of what was in the Employer's interest, but was bound to assess the client's interest solely against the objectives and scope of the representation as determined by the client.

tip that reporting that [the] client was a *victim* of a crime was manifestly in [the] client's interest" (emphasis added).  *See also* Br. at 25 (stating that "Claimant's whistleblower submission was intended to alert the authorities to [the theft of investor funds a Defendant] so they might protect Claimant's client from this theft, stop it, and return the stolen funds to the project so that Claimant's client could carry on its lawful business").  This argument is doubly flawed:  as discussed above, it fails to assess the "client's interest" by reference to the client's objectives in pursuing the representation; and, even more fundamentally, it is squarely inconsistent with what Claimant said Claimant believed when making the disclosures to the Commission.  Far from a motivation of protecting a victimized client, the record unambiguously demonstrates that Claimant suspected that the client was involved in the wrongdoing and that Claimant fully recognized that the client could be investigated by the Commission as a result of the disclosures.  *See supra* pp. 9-10.[10]

*    *    *

---

[10]     Claimant relies on a New Jersey state-court decision for the proposition that there is "'no violence to the fundamental policy underlying the [attorney-client] privilege where an attorney, in an honest attempt to protect or exonerate his client, provides law enforcement authorities with information he reasonably believes will serve that goal.'"  Br. at 24 (quoting *State v. Schubert*, 561 A.2d 1186, 1190 (N.J. Super. Ct. App. Div. 1989).  That case has no application here because, as the record demonstrates, Claimant was not "attempt[ing] to protect or exonerate" Employer when making the disclosures to the Commission.  *Id.* (citation and internal quotation marks omitted).

During the award-application proceedings before the Commission, Claimant identified several other regulatory provisions (including several provisions under the Florida Rules) that Claimant claimed could authorize the disclosures. The Denial Order considered and rejected each of these, finding that on the record before the Commission Claimant had failed to demonstrate that any of these authorized the disclosures. *See generally* A94-99.

Claimant's opening brief does not raise any specific challenges to the Denial Order's conclusions that those other provisions did not authorize Claimant's disclosures to the Commission. Rather, in a footnote Claimant states that all of the arguments advanced before the Commission concerning the potential applicability of these other provisions "are incorporated by reference as if set forth fully herein." Br. at 13 n.2. But it is well established that, by proceeding this way, Claimant has waived each of those arguments. *See, e.g.*, *Covad Commc'ns Co. v. FCC*, 450 F.3d 528, 546 (D.C. Cir. 2006) (holding that a party waived arguments that they "attempt[ed] to incorporate by reference" in "a single footnote"); *see also Davis v. Pension Benefit Guar. Corp.*, 734 F.3d 1161, 1167 (D.C. Cir. 2013) (rejecting appellants' attempt to incorporate by reference into their opening brief arguments raised in district court filings).

## CONCLUSION

For the foregoing reasons, the petition for review should be denied and the

Denial Order affirmed.

Respectfully submitted,

MEGAN BARBERO
General Counsel

MICHAEL A. CONLEY
Solicitor

/s/     *William K. Shirey*
WILLIAM K. SHIREY
Counsel to the Solicitor
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
(202) 551-5043 (Shirey)

July 2023

# CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains approximately 4,590 words, excluding the parts exempted by Fed. R. App. P. 32(f).

I also certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-Point Times New Roman.

/s/    *William K. Shirey*
WILLIAM K. SHIREY

**CERTIFICATE OF SERVICE**

I hereby certify that on July 11, 2023, I electronically filed the foregoing

Brief of the Securities and Exchange Commission, Respondent, with the Clerk of

Court for the United States Court of Appeals for the D.C. Circuit using the

appellate CM/ECF system.

Finally, I certify that I caused a copy of the foregoing to be served on

Petitioner Doe's counsel using this Court's appellate CM/ECF system.


/s/     *William K. Shirey*
WILLIAM K. SHIREY